UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MANUEL PANTOJA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13 C 7654 |
| ) | |
| PORTFOLIO RECOVERY ASSOCIATES, LLC, ) | Honorable Rebecca R. Pallmeyer |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Portfolio Recover Associates, LLC ("PRA"), a debt collector, brought a collection suit in Illinois state court against Plaintiff Manual Pantoja for a credit card debt allegedly owed by Plaintiff. On the day of trial, Defendant dismissed the suit, and the trial court later ordered Defendant to refund Plaintiff's appearance fee. Plaintiff alleges that these circumstances add up to a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. In his lawsuit before this court, Plaintiff contends that Defendant filed the state court action under false pretenses, in violation of the FDCPA, because Defendant had no intention of actually proceeding to trial. Plaintiff also brings a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") premised on these the same events and theory of liability. Both parties have moved for summary judgment. For the reasons that follow, Defendant's motion [31] is granted and Plaintiff's motion [26] is denied.[1]

## BACKGROUND

Plaintiff Manuel Pantoja lives in Melrose Park, Illinois and drives a truck for a living. (Def.'s Resp. [30] to Pl.'s Stat. of Mat. Facts [27], hereinafter "Pl.'s 56.1," ¶ 1(a); Pantoja Dep., Ex. A. to Pl.'s 56.1, hereinafter "Pantoja Dep.", 13:24–14:1.) PRA is a Delaware limited liability

---

[1] In addition, the court notes Plaintiff's request to strike Defendant's motion for summary judgment [37] for failure to comply with Federal Rule of Civil Procedure 56 or Local Rule 56.1. Defendant did respond in detail to Plaintiff's Rule 56.1 Statement, citing portions of the record in support of its own factual statements [30]. The court finds this submission satisfies the purposes of the Local Rule and declines to strike it.

company with its principal place of business in Norfolk, Virginia. (*Id.* ¶ 1(b).) PRA is a "debt collector" within the meaning of the FDCPA because it is in the business of purchasing defaulted consumer credit card accounts from banks and then attempting to recover those debts from account holders. *See* 15 U.S.C. § 1692a(6); (Def. Answer [13] to Compl. [1], ¶ 9.)

Sometime in 2007, Plaintiff opened a credit card account with HSBC Bank Nevada, NA ("HSBC"); he used the card for approximately four years for "general household purposes," such as "eating, fueling, bathing, [and] living." (Pl.'s Resp. to Def. Interrog. 6, Ex. 4 to Def.'s 56.1 [30-4], ¶ 6; Pantoja Dep. at 38:19–39:10; 39:18–22.) By 2010, Plaintiff had incurred an unpaid balance of $5,198.86 on the card. (*See* PRA Payment Demand Letter, Ex. A [30-1] to Def.'s Stat. of Mat. Facts [30], PRA0096.) PRA purchased Plaintiff's account from HSBC on August 24, 2010 as part of a portfolio of defaulted credit accounts. (*See* Knickerbocker Aff., Ex. 1 to State Court Complaint [1-1], Ex. 1 to Compl., ¶ 3.) The Purchase and Sale Agreement that HSBC and PRA negotiated as part of that sale applies to Plaintiff's account and contains the following relevant language:

> 2.2 The Purchased Accounts and Purchased Receivables shall not include accounts and receivables (hereinafter referred to as "Unqualified Accounts" and "Unqualified Receivables") which, as of the applicable date of the Sale File, are classified as follows: [categories of accounts likely not recoverable because debtor is bankrupt, deceased, subject to a fraud charge, disputed, etc[.]
>
> 2.3 Except as otherwise provided herein or in the case of a breach of the [HSBC's] warranties, representations or covenants pursuant to this Agreement, all Purchased Accounts and Purchased Receivables sold to [PRA] under this Agreement are sold and transferred without recourse as to their enforceability, collectability, or documentation. [PRA] has made an independent investigation as [PRA] deems to be warranted into the nature, enforceability, collectability and value of the Purchased Accounts and Purchased Receivables, and all other facts it deems material to such purchase, and is entering into the transactions herein provided for solely on the basis of that investigation and [PRA's] own judgment, and is not acting in reliance on any representation of, or information furnished by [HSBC], specifically including, but in no way limited to, that information contained in each Sale File, except as otherwise provided for herein.

(Purchase and Sale Agreement [28]; *see* Bills of Sale, Ex. A to Def.'s 56.1 at PRA0056, PRA00110–111.)

2

On June 18, 2013, Defendant, through its attorney, filed a lawsuit against Plaintiff in the Circuit Court of Cook County, Illinois. (*See* State Court Complaint, Ex. 1. to Compl. [1-1], 13-M1-135886, hereinafter "State Court Complaint," 2.) The State Court Complaint alleged that Plaintiff had an unpaid credit card balance of $5,198.86, that Defendant was HSBC's "successor in interest" to the account, and that Defendant demanded payment of the balance. (*Id.* at 3.) Defendant attached the affidavit of David L. Knickerbocker, then an employee of PRA, to support the Complaint's allegations. (*See generally* Knickerbocker Aff.) Mr. Knickerbocker's affidavit states that he reviewed the business records of "[PRA] and those records transferred to [PRA] from HSBC Bank Nevada, N.A./Metris" before executing the affidavit, and that such records included Plaintiff's account information. (Knickerbocker Aff. ¶¶ 2–3.) Mr. Knickerbocker ended his employment with PRA on April 12, 2013; he was not deposed by either party. (Pl.'s Resp. to Def.'s 56.1 [38] ¶ 1.) Plaintiff filed an appearance in the state court case on July 23, 2013, and the case was scheduled for trial on August 6. (Def.'s Resp. to Pl.'s 56.1 ¶ 3(d)(ii).) On the day of trial, however, Defendant voluntarily withdrew the complaint. (*Id.*) The state trial court later ordered that Defendant refund Plaintiff's $186 appearance fee. (*See* Trial Court Order, Ex. 3 to Compl. [1-3].)

Plaintiff alleges in this court that Defendant's State Court Complaint was "inherently deceptive, false, and misleading because it is based on unverified information that PRA acquired 'as-is.'" (Compl. ¶ 48.) Further, Plaintiff alleges, "[i]t can be reasonably inferred that PRA voluntarily dismissed the lawsuit because it knew it could not meet its burden of proving that [Plaintiff] owed the debt by a preponderance of the evidence" (*id.* ¶ 53), and that such conduct entitles Plaintiff to relief under the FDCPA and the ICFA.

## **DISCUSSION**

The court will grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The court "construe[s]

all facts and draw[s] reasonable inferences in the light most favorable to the nonmoving party." *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011). The court will grant summary judgment against a party that does not produce evidence that would allow a reasonable jury to find in its favor on a material question. *McGrath v. Gillis*, 44 F.3d 567, 569 (7th Cir. 1995). Summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008) (internal quotation marks and citation omitted).

### I. FDCPA Sections 1692e(2) and 1692e(10)

In Count I, Plaintiff alleges that Defendant violated 15 U.S.C. § 1692e(2) and (10) by filing the State Court Complaint based on unverified account information and with no intention of attempting to prove its case at trial. Plaintiff points to Defendant's Purchase and Sale agreement with HSBC, which contains language that Plaintiff interprets as a "disclaim[er]" of the "accuracy of its records and information." (Compl. ¶ 44; *see* Purchase and Sale Agreement, Ex. A to Def.'s 56.1 at PRA0056 (PRA agrees to purchase the defaulted credit accounts from HSBC "without recourse as to their enforceability, collectability, or documentation.").) Without accurate information to assess the validity of the debt, Plaintiff argues, Defendant's decision to file a lawsuit in state court "perpetrates a fraud on the consumer" in violation of the FDCPA because Defendant would never be able to prove the validity of the debt owed. (*Id.*; *see id.* ¶¶ 45–57.) In other words, Plaintiff's theory is that because Defendant "never intended to prove its case" in state court, it "did not have a good-faith basis for filing its lawsuit" in the first place, and that doing so violates the FDCPA. (Pl.'s Reply in Supp. of Summ. Judg. [37], 6.)

Plaintiff bolsters this theory with another allegation: that Defendant "falsely represented the status of [Plaintiff's] alleged debt" because it "has yet to produce a document that explicitly links [Plaintiff] and his credit card account to the Purchase and Sale Agreement" between Defendant and HSBC. (Pl.'s Mem. in Supp. of Summ. Judg. [29], 7.) And in his brief, Plaintiff challenges Knickerbocker's affidavit, arguing that it would be inadmissible under Illinois'

4

business records exception because it was not based on personal knowledge and is therefore unreliable. (*See id.* at 4, citing ILL. R. EVID. 803(6).) Curiously, though Plaintiff insists Knickerbocker lacked knowledge necessary to submit the affidavit accompanying the State Court Complaint, Plaintiff did not depose Knickerbocker in this case.

One of the FDCPA's central purposes is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e); *see Jenkins v. Heintz*, 124 F.3d 824, 828 (7th Cir. 1997). In relevant part, § 1692e(2)(A) prohibits a debt collector from falsely representing "the character, amount, or legal status of any debt," while § 1692e(10) prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt[.]" Courts view FDCPA claims "through the eyes of an 'unsophisticated debtor.'" *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 758 (7th Cir. 2006) (citation omitted).

The court concludes that the evidence does not establish a claim for relief under the FDCPA. Without definitively resolving the issue before this court, the Seventh Circuit has observed that "it is far from clear that the FDCPA controls the contents of pleadings in state court." *Beler v. Blatt Hasenmiller Leibsker & Moore*, 480 F.3d 470, 473 (7th Cir. 2007). In *Beler*, a plaintiff consumer sued a debt collection firm, asserting that the firm violated the FDCPA when it filed a state court collection suit against the plaintiff containing allegations that were allegedly confusing to an "unsophisticated consumer." *Id.* at 472. The Court of Appeals affirmed the district court's grant of summary judgment in favor of the defendant, noting that plaintiff's "theory assumes that the [FDCPA] regulates the contents of complaints, affidavits, and other papers filed in state court"—a tenuous proposition, according to the court, because a state court judge is in the best position to assess a state court complaint's alleged defects. *Id.* at 473. This court finds *Beler*'s logic persuasive here and declines to police the adequacy of state court filings in the context of an FDCPA claim. Any attack on the State Court Complaint should occur in state court, as several other courts in this district have concluded. *See, e.g.*, *St. John v. CACH, LLC*, No. 14-cv-0733, 2014 WL 3377354 (N.D. Ill. July 8, 2014) (St. Eve, J.) (collecting

5

cases) ("It is well-established in this district that FDCPA claims cannot be based on violations of the Illinois state pleading requirements."); *Krawczyk v. Centurion Capital Corp.*, No. 06-cv-6273, 2009 WL 395458, *9 (N.D. Ill. Feb. 18, 2009) (Dow, J.) ("Losing or voluntarily dismissing a collection case does not by itself create an FDCPA claim against the creditor and its attorneys."); *Manlapaz v. Unifand CCR Partners*, No. 08-cv-6254, 2009 WL 3015166, at *5 (N.D. Ill. Sept. 15, 2009) (Hibbler, J.) ("A claim alleging insufficient state-court pleadings is controlled by state procedural and evidentiary law and is not a valid claim under the FDCPA"). Whatever the merits of Plaintiff's argument that Defendant did not intend to go to trial, the challenge to the state court pleadings should have occurred in state court.[2]

As a secondary argument, Plaintiff argues that the affidavit, and the underlying business records Knickerbocker attests to, would be inadmissible at trial because the bundle of defaulted debts that PRA purchased from HSBC were sold "without recourse as to their enforceability, collectability, or documentation." As PRA could not prove its case at trial, the argument goes, it violated the FDCPA's prohibition against deceptive conduct in the collection of a debt. *See* 15 U.S.C. § 1692e(10). The court rejects this argument, as well. Defendant produced the underlying business records on which Knickerbocker relied (*see* Exhibit A to Def.'s 56.1 at PRA0037–0040; PRA0068–0095; PRA00103–109), and Plaintiff offers nothing to refute the accuracy of these documents, which contain monthly statements from HSBC to Plaintiff, records of the growing amounts owed on the card, and notices of default mailed to Plaintiff. (*See id.*) And Plaintiff has not create a dispute of fact on Defendant's claim that it legally owns the debt at issue, so Plaintiff has not shown that Defendant cannot be liable under the FDCPA for falsely representing that it has the legal authority to pursue collection efforts. *Compare Gearing v. Check Brokerage Corp.*, 233 F.3d 469, 472 (7th Cir. 2000) (falsely representing one's legal right

---

[2] Plaintiff also points out that the only supporting documentation Defendant attached to its State Court Complaint was Knickerbocker's affidavit, which Plaintiff alleges contains false statements regarding Defendant's record-keeping practices and Knickerbocker's knowledge of those practices. (Pl.'s Mem. at 4.) But because Plaintiff did not depose Knickerbocker, on this record the court cannot determine what knowledge he did or did not possess about PRA's business records.

to collect a debt gives rise to FDCPA liability). In the final analysis, there is no evidence that Defendant lacked a good-faith basis for pursuing its collection claim in state court, and that is sufficient to dispose of Plaintiff's FDCPA claim here.

## II. ICFA Claims

Because the court has granted summary judgment to Defendant on Plaintiff's FDCPA claim, only Plaintiff's ICFA claim remains. The court's original jurisdiction in this case was based on the FDCPA, a federal statute. *See* 28 U.S.C. § 1331. The court had supplemental jurisdiction over the ICFA claim only. *See* 28 U.S.C. § 1367. Although the decision to exercise supplemental jurisdiction is within the district court's broad discretion, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (quoting *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

After careful consideration, this court believes the most prudent course is to dismiss the ICFA claim without prejudice.

## **CONCLUSION**

For the above reasons, the court grants Defendant's motion for summary judgment [31] as to Count I and dismisses Count II without prejudice. Plaintiff's motion for summary judgment [26] is denied in its entirety.

ENTER:

Dated: March 24, 2015

_____
REBECCA R. PALLMEYER
United States District Judge

7